UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOHN SIMEON, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 3:14-046-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KENTUCKY DEPARTMENT OF | ) | **&** |
|   CORRECTIONS, et al., | ) | **ORDER** |
| | ) | |
|     Defendants. | | |

**        **       **       **       **       **

Plaintiff John Simeon, an inmate in the custody of the Kentucky Department of Corrections, is presently confined at the Kentucky State Reformatory ("KSR") in LaGrange, Kentucky.  Proceeding *pro se*, Simeon has filed a complaint,[1] pursuant to 42 U.S.C. § 1983, against defendants, Kentucky Department of Corrections ("KDOC"); Frederick Kemen, M.D. ("Dr. Kemen"), Elaine Smith, A.P.R.N. ("Nurse Smith"), Shelli Conyers-Votaw, A.P.R.N. ("Nurse Conyers-Votaw"), Carol Cornett, A.P.R.N. ("Nurse Cornett"), Denise Black, R.N. ("Nurse Black"), and CorrectCare–Integrated Health, Inc. ("CorrectCare"), alleging violations of his Eighth Amendment rights concerning the medical care he has received for treatment of prostate cancer.  Simeon has sued all defendants in both their individual and official capacities. He seeks compensatory and punitive damages from all defendants**,** as well as prospective injunctive relief.

---

[1] Simeon filed this action in Franklin Circuit Court on June 9, 2014.  Defendants removed this action from Franklin Circuit Court on June 17, 2014. [R. 1.]

At the time Simeon filed this action, he also moved for the appointment of counsel. That motion was pending when defendants removed this action and will be addressed herein. This matter is also before the Court on the defendants' motions to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim against them for which relief can be granted. [R. 3; R. 4.] Plaintiff having filed no response thereto, and the response time having expired, these motions are ripe for review.

For the reasons stated below, the defendants' dispositive motions will be granted. Plaintiff's complaint will be dismissed, and his motion for the appointment of counsel will be denied as moot.

## I

While Simeon is currently confined at KSR, he has previously been confined at Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky, and at North Point Training Center ("NTC") in Burgin, Kentucky.[2] The individual defendants worked as employees of CorrectCare at the medical departments within these institutions during the time period relevant to Simeon's claims.

This action is the second lawsuit Simeon has filed relating to the treatment of his prostate cancer. On May 29, 2013, he filed a *Bivens* complaint asserting Eighth Amendment claims in the United States District Court for the Western District of Kentucky against six of the same defendants named herein. *See Simeon v. Ky. Dept. of Corrections, et. al.*, Case No. 3:13-CV-P534-S (W.D. Ky. 2013) [R. 1, therein].[3] In the present action, Simeon asserts the same Eighth

---

[2] Defendants advise that CorrectCare previously supplied medical personnel to staff these particular institutions, LSCC and NTC, for the KDOC, but that CorrectCare no longer provides these services to the KDOC. [R. 3-1, Page ID# 142-43.]

[3] For sake of clarity, Simeon's prior lawsuit filed in the Western District of Kentucky will hereafter be referred to as the "First Action." The present lawsuit will be referred to as the "Second Action."

Amendment claims against the same six defendants, and he also names Elaine Smith, A.P.R.N., a nurse at KSR as an additional defendant.

Simeon was diagnosed with prostate cancer while incarcerated and underwent a complete prostatectomy on March 11, 2013. [Compl., R. 1-3 at 15.]  From August through October of 2013, he received thirty-five (35) adjunctive radiation therapy treatments at the James Graham Brown Cancer Center ("JGBCC") at the University of Louisville ("U of L"). [*Id.*, R. 1-3 at 16; Exh. 560, R. 1-3 at 109.]  After completing radiation therapy, his urologist noted "no evidence of disease progression." *Id.*  Despite this successful result, Simeon criticizes the defendants for an alleged delay in diagnosis and treatment of his prostate cancer, and he claims that defendants' failure to provide him with prescriptions for B-12 and Vitamin D supplements contributed to his cancer. [Compl., R. 1-3 at 9, 11, 13, 18.]

Simeon was transferred to LSCC on March 23, 2009.  While there, he claims that Nurses Cornett and Black mistreated him. [Compl., R. 1-3 at 11.]  On December 4, 2009, Nurse Cornett discontinued his vitamin prescriptions and directed him instead to purchase a "made in China drug (Vitamin) which was not approved by the FDA." *Id.*  Simeon alleges that Nurse Cornett's actions were in "violation" of CorrectCare's policies directing the activities of its employees and which were created "with [CorrectCare's] primary concern being the welfare of its patients." *Id.* According to Simeon, Nurses Cornett and Black did not adequately review his medical records, which at that time would have shown that a recent PSA[4] test revealed a level of 4.1 ng/mL.  *Id.*

---

[4] PSA refers to "prostate specific antigen."  Presence of this antigen in a man's blood may be an indication of prostate cancer.  Although barely out of the normal range of 0.0 to 4.0 ng/mL, Simeon claims that this result required immediate treatment.  However, contrary to Simeon's claim, a test result of 4.1 ng/mL is not definite proof that he had cancer at that time. *See* http://www.cancer.gov/cancertopics/factsheet/detection/PSA.

The allegations concerning Nurses Black and Cornett set forth in his First Action were substantially the same.[5]

On May 13, 2010, Simeon was transferred to NTC, where he encountered Nurse Conyers-Votaw.  Simeon claims that she "cut out" his vitamins and failed to check his previous PSA test result.  [Compl., R. 1-3 at 12.]  She performed a digital rectal exam ("DRE") on October 12, 2011, but did not order another PSA test at that time.  *Id*.  Simeon asserts that Nurse Conyers-Votaw's actions were  in "violation" of CorrectCare's policies directing the activities of its employees which were created "with [CorrectCare's] primary concern being the welfare of its patients."  *Id*.  Simeon's allegations of unconstitutional medical treatment by Nurse Conyers-Votaw in this Second Action are substantially the same as those against her in his First Action.[6]

In January of 2012, Simeon was transferred to the Kentucky State Penitentiary.  [Compl., R. 1-3 at 13].  On May 8, 2012, he received two PSA tests under the care of Dr. Steven Hiland, which indicated significantly elevated levels of 22.3 and 23.9 ng/mL.  *Id.*  Dr. Hiland also performed a DRE and noted three nodules on Simeon's prostate, which resulted in a request that Simeon be examined by a urologist, Dr. Anna D'Amico, in Madisonville, Kentucky.  *Id.*  Dr. D'Amico performed a biopsy on August 2, 2012, which was positive for cancer, whereupon she ordered a CT scan to determine if it had metastasized.  *Id.*  A CT scan of his abdomen and pelvis was performed on September 13, 2012, and showed no evidence that the cancer had spread.  *Id.*

---

[5] In the First Action, Simeon stated that, "While at LSCC and NTC the medical staff was too preoccupied in cutting my Vitamins and thus cutting costs to take a look at the blood tests that had been taken before I arrived there." [First Action Compl., R. 1 at 8].  He further alleged that, "Had I known that PSA was back in 2009 it could have been taken care of with little side effects.  As it was I was not checked again until 5-8-12 when it was 22.9; FULL BLOWN AGGRESSIVE CANCER.  When I went to LSCC in 2009 it should have checked on, but wasn't.  That was when Denise Black, R.N. and Carol Cornett, NP were in charge of medical at Little Sandy." [*Id.* at 7.]

[6] *Id.* at 8 ("Shelli Conyers Votaw, APRN performed a DRE (digital rectal exam) and located nothing. . . . Shellie Conyers-Votaw APRN, failed to detect the cancer as well.").

Dr. D'Amico recommended removal of the prostate, but she did not perform surgeries anymore as part of her practice. [*Id*. at 13; "Exhibit D, p. 4," R 1-3 at 62].

On October 15, 2012, Simeon was transferred to KSR, and he was examined by Dr. Kemen for the first time on October 23, 2012.[7] [Compl., R. 1-3 at 14.] Dr. Kemen arranged for him to see Dr. Christopher Smith, a urologist at U of L Hospital, on November 5, 2012. *Id.* Simeon wanted a second opinion on whether a nerve sparing procedure could be done, a procedure that Dr. Smith did not perform. *Id.* Dr. Smith recommended that he see Dr. Malkani Ankem for that purpose. *Id.* The next day, Dr. Kemen made that same request for a second opinion, and also ordered a nuclear bone scan to see if the cancer had spread. *Id.* That bone scan was performed on December 10, 2012. *Id.* Simeon complains that Dr. Kemen went "rogue" and cancelled his B-12 shots because he was upset about Simeon causing further delay to the treatment of his aggressive cancer. *Id.* Rather, Dr. Kemen discontinued the B-12 shots after reviewing Simeon's medical history and determining that those shots were not clinically indicated. [*See* "Exhibit A, pg. 8," R. 1-3 at 76]. Dr. Kemen did not see Simeon again after November 6, 2012, after which time he assigned Nurse Smith as his primary care provider. [*Id.* at 14, 15.][8] Dr. Kemen's medical treatment was the basis of Simeon's claims against him in the First Action in which he alleged that Dr. Kemen wrongfully discontinued his B-12 shots and

_____

[7] The Complaint references medically related events occurring in 2006 when Dr. Kemen allegedly covered for another doctor at Luther Luckett Correctional Complex while he was on vacation. [Compl., R. 1-3 at 10]. Simeon states that Dr. Kemen should have taken the initiative and been more involved in bandage changes by nurses there. *Id.* These events are not addressed herein because they clearly do not directly implicate Dr. Kemen and since they happened almost eight years ago, any claim arising from those events is barred by the one-year statute of limitations.

[8] Simeon pleads that he was "never been seen by" Dr. Kemen following his appointment on November 6, 2012. [R. 1-3 at 14]. He further states that Dr. Kemen put him under the care of Nurse Smith at that time. [*Id*. at 15.]

caused delay in his surgery.  [*See* First Action Compl., R. 1 at 5-6.][9]

Simeon saw Dr. Ankem on December 20, 2012.  [Compl. R. 1-3 at 14.]  Dr. Ankem did not know that Dr. Kemen had already arranged for a bone scan; therefore, he ordered another bone scan to see if Simeon's cancer had spread.  *Id*.  Dr. Messer, Dr. Ankem's colleague who would later perform Simeon's surgery, entered a surgery order on January 4, 2013.  [*Id*. at 17.] While waiting for the surgery to be approved for payment and scheduled by the KDOC, Simeon saw Nurse Smith on December 31, 2012 and February 5, 2013. [*Id*. at 15, 17.]  He claims that she did not know about his cancer when she saw him in December and did not have any information to offer him regarding the status of his surgery in February.  *Id*.  He acknowledges, however, that Nurse Smith was trying to get his surgery approved and scheduled on February 19, 2013.  [*Id*. at 10; Exh. "594 – 595," R. 1-3 at 92-93.]  Simeon includes Nurse Smith in his narrative about his purported delayed surgery, but it is unclear whether he is asserting a deliberate indifference claim against her based on that delay.  [ *Id*. p. 15.][10]

Following the prostatectomy in March of 2013, Simeon claims that his radiation therapy treatments were inappropriately delayed until August of 2013.  [*Id*. at 17].  He claims that "this was another delay of deliberate indifference caused by the KDOC, Dr. Kemen, Elaine Smith and CorrectCare Inmate [sic], for not keeping on top of things and keeping them moving."  *Id*. However, Simeon fails to plead any specific allegations as to how CorrectCare or Dr. Kemen

---

[9] In that Complaint, Simeon states that he "has been denied the medical care which he is entitled to under The Eighth Amendment of The United States Constitution, when Dr. Frederick Kemen failed to in a timely manner take care of the Prostate Cancer which was known to be growing for over 10 months before an operation was performed." [First Action Compl., R. 1 at 5.] Writing about Dr. Kemen, Simeon also states that "he took away the B-12 shot I was getting once a month for over the last five years." [*Id*. at 6.]

[10] Specifically, Simeon pleads that Nurse Smith "had never so much as checked my record to see why I was here at KSR and the deliberate indifference of Dr. Kemen never told her about the cancer before he put me into her care." [R. 1-3 at 15.]

caused this alleged delay of his radiation treatments.  He only claims that Nurse Smith saw him on April 30, 2013, at which time she lied to him about having appointments at JGBCC. [*Id.* at 17, 20; "Exhibit 585," R. 1-3 at 108.] After asking how old Simeon was at that time (then age 65), Nurse Smith allegedly said, "That's good because I hate it when someone in their 40's has something like this." [*Id.* at 20, 108.]

Simeon moved for preliminary and permanent injunctive relief in the First Action, claiming that his post-surgery radiation therapy was wrongfully delayed.  [*See* First Action, Mot. for Preliminary & Permanent Injunction, R. 4, therein.]  Although his Motion was directed at Dr. Kemen and the KDOC, he mentioned Nurse Smith in the declaration he attached in support of that Motion. [First Action, Declaration, R. 4-1 at 2.]  That declaration contained essentially the same statements regarding Nurse Smith that are alleged herein.  *See id.* Judge Simpson ultimately denied Simeon's motion for injunctive relief prior to dismissing all of his claims in the First Action, finding that he was continuing to receive constitutional treatment after his surgery. [*See* First Action, Memorandum Opinion and Order (Jan. 23, 2014), R. 12, therein.]

Despite his criticisms of Nurse Smith, Simeon had his initial oncology evaluation at the JGBCC Genitourinary Oncology Clinic on May 9, 2013, at which time the plan was to complete a staging work up.  [Second Action, Exh. 616, R. 1-3 at 39.][11]  Also in May, JGBCC treated Simeon with intensity-modulated radiation therapy ("IMRT") and administered a dose of androgen-deprivation therapy.  *Id.*  Nurse Smith requested a follow-up exam with Dr. Moffet, an oncologist at JGBCC, which occurred on June 27, 2013.  [Exh. 18, R. 1-3 at 94.]  Dr. Moffet referred Simeon to JGBCC Radiation Oncology for additional radiation treatments for his

---

[11] When denying Simeon's Motion for Preliminary Injunction in the First Action, Judge Simpson noted that Dr. Moffet ordered various tests and ordered Simeon to return to the clinic in three months. [First Action, R. 12 at 7]. He also stated that Simeon had a CT scan of the abdomen and a whole body scan prior to returning to Dr. Moffet on June 27, 2013.  *Id.*  Nurse Smith requested this CT scan on Simeon's behalf.  [Second Action, R. 1-3 at 25].

prostate cancer. *Id*. These treatments started on August 12, 2013, and ended on October 3, 2013. [Exh. 560, R. 1-3 at 109.]

Lastly, Simeon makes additional general allegations against Nurse Smith. He claims that she wrongfully refused to restart the vitamin B-12 shots that were discontinued by Dr. Kemen, which he believes "cause[s] the Cancer to run out of control while they wait to treat and operate." [R. 1-3 at 16]. He also asserts that she prescribed two – as opposed to the recommended one – enemas prior to each of the radiation treatments he received after his surgery, which he claims is "another deliberate indifference issue." *Id.*

## II

## A

The Court first considers Simeon's claims against CorrectCare Inmates. To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated, and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). A complaint filed under § 1983 must show a causal connection between each of the named Defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by each Defendant was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 828-29 (9th Cir. 1986). "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, Plaintiff must adduce "an affirmative link, [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id*. When the theory of causation is a matter of pure speculation and is nothing more than a hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983

8

claim.  *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

In the present case, Simeon sets forth facts about what allegedly occurred.  However, he fails to connect any of the facts or allegations to Defendant Correctcare Inmates.  There are no facts regarding any specific action or inaction on the part of Defendant Correctcare Inmates.  Thus, there is nothing in the complaint which shows a causal connection between this Defendant and the alleged constitutional deprivation.

For these reasons, Defendant Correctcare Inmates and the claims against it will be dismissed from this action.

**B**

Simeon also raises claims against KDOC in its individual and official capacities. The Court considers each of these types of claims in turn.

**1**

Individual-capacity suits, also known as personal-capacity suits, seek to impose individual liability on a "government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  The individual-capacity designation is not applicable to a Defendant, such as KDOC, which is not an individual since no personal liability is involved.  Accordingly, the individual-capacity claims against the KDOC will be dismissed from this action.

**2**

Under the Eleventh Amendment to the U.S. Constitution,[12] a state and its agencies may

---

[12] The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

Accordingly, the official-capacity claims against the KDOC will also be dismissed from this action. The KDOC's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim against it for which relief may be granted will be granted in its entirety.

## C

Next, Simeon brings claims against Defendants Kemen, Conyers-Votaw, Cornett, Black, and Smith, in their official and individual capacities. Each type of claim is considered in turn.

## 1

The Eleventh Amendment bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official

---

by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages are barred by Eleventh Amendment immunity). Thus, the official-capacity claims for money damages against defendants Kemen, Smith, Conyers-Votaw, Cornett, and Black will be dismissed from this action.

**2**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Kemen, Conyers-Votaw, Cornett, Black, and Smith have moved to dismiss Simeon's claims for monetary damages against them in their individual-capacities for failure to state a claim against them for which relief can be granted. Dismissal is proper under Fed. R. Civ. P. Rule 12(b) when, after resolving all doubts and inferences in favor of the non-moving party, it is evident that no relief may be granted consistent with the allegations in the complaint. *Miller v. Currie*, 50 F. 3d 373 (6th Cir. 1995). The Court need not accept as true legal conclusions or unwarranted factual inferences. *Blackburn v. Fisk University*, 443 F. 2d 121 (6th Cir. 1971). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss. *Mezibov v. Allen*, 411 F. 3d 712 (6th Cir. 2005). When it is clear from the complaint that the statute of limitations has expired, dismissal pursuant to FRCP 12(b)(6) is appropriate. See *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

Although a court ruling on a Rule 12(b)(6) motion may not consider matters outside the pleadings, see *Hammond v. Baldwin*, 866 F. 2d 172, 175 (6th Cir. 1989), when a plaintiff attaches an exhibit to his complaint, the attachment becomes a part of that pleading and may properly be considered. See Fed. R. Civ. P. Rule 10(c). Accordingly, the voluminous records attached to the Complaint are properly considered as part of Simeon's pleadings.

11

In his Complaint, Simeon raises issues related to the delay in diagnosis and treatment of his prostate cancer, most of which are identical to the issues contained in his First Action. With the exception of Nurse Smith, Simeon named the same defendants in the First Action as he did in the present action (the Second Action). Simeon simply reiterated the same claims in the Section Action as in the First Action, plus he asserted an Eighth Amendment claim against an additional defendant, Nurse Smith. The Second Action presents a textbook case for claim and issue preclusion. Additionally, as addressed later herein, most of Simeon's claims are barred by the applicable one-year statute of limitations.

Finally, as subsequently explained, any remaining claims not barred by res judicata or the statute of limitations, are based on allegations and issues that simply do not give rise to a plausible claim of entitlement to relief under the Eighth Amendment. For all of these reasons, Simeon's complaint in the present action is subject to dismissal in its entirety.

## D

Simeon's remaining claims against Dr. Kemen, Nurse Cornett, Nurse Conyers-Votaw, and Nurse Black, as well as Nurse Smith, are barred by the doctrines of claim and issue preclusion. Simeon's First Action was dismissed for failure to state a claim pursuant to the Prisoner Litigation Reform Act ("PLRA"). That dismissal was on the merits and therefore triggers the doctrines of claim and issue preclusion. *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (citing *Fed. Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (district court properly dismissed second suit as *res judicata* because a previous suit had been dismissed pursuant Fed. R. Civ. P. Rule 12(b)(6)); *Murray v. Reed*, 69 F. App'x 246, 247 (6th Cir. 2003) (dismissal of inmate's §1983 claim was proper because prior dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 1915A(b) was *res judicata* as to claims made in

subsequent suit); *Smith v. Morgan*, 75 F. App'x 505 (6th Cir. 2003) (dismissal under 28 U.S.C. § 1915(e) constitutes adjudication on merits for purposes of *res judicata*).

"The broad doctrine of *res judicata* encompasses both claim and issue preclusion." *JZG Resources Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion, or "true res judicata," provides that a "valid and final judgment on a claim precludes a second action on that claim or any part of it." *Id*. The doctrine bars litigation of issues "that were actually litigated" and those issues that "could have been raised" in a previous suit between the parties. *Id*. *Res judicata* extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id*. quoting (Restatement (Second) Judgments § 24 (1982)). "Under issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation." *Morgan*, 75 F. App'x at 506-07 (citing *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979)).

## 1

Claim preclusion bars Simeon's claims against Dr. Kemen, Nurse Cornett, Nurse Conyers-Votaw, and Nurse Black, all of whom were parties to his First Action. Further, the First Action, which the court dismissed for failure to state a claim, arose from the same series of events alleged in this Second Action relating to the medical care and treatment Simeon received for prostate cancer. More specifically, Simeon has alleged in both actions that: (1) Nurses Cornett and Black should have taken more prompt action based on a PSA level of 4.1 ng/ML while he was at LSSC; (2) Nurse Conyers-Votaw should have detected his cancer sooner either by DRE or by doing a repeat PSA test while he was at NTC; (3) Dr. Kemen discontinued his

Vitamin B-12 injections and delayed his prostate surgery; and (4) his radiation treatments were unnecessarily postponed.[13]   Claim preclusion bars Simeon from a second bite of the apple against these same defendants in the Second Action; his claims against them will be dismissed.

**2**

Although she was not a party to the First Action, the claims against Nurse Smith are also barred by issue preclusion.  Even so, out of an abundance of caution, the Court has also considered Simeon's claims against Nurse Smith on the merits.  *See infra.*  As a necessary basis of its dismissal, the court in the First Action found that Simeon's cancer treatment before and after his surgery was not inappropriately delayed so as to constitute an Eighth Amendment violation.  [First Action, Memorandum Opinion & Order, R. 23, 24; First Action, Memorandum Opinion and Order, R. 12 at 8.]  Issue preclusion "is appropriate when [a] pro-se litigant brings repeated actions upon [the] same operative facts with slight change in legal theories or 'cast of characters-defendants.'"  *Randles,* 965 F.2d at 93 (quoting *Hazzard v. Weinberger*, 382 F.Supp. 225, 225, 226-29 (S.D.N.Y. 1974), *aff'd* 519 F.2d 1397 (2nd Cir. 1975)).  Simeon cannot simply change the "cast of characters" related to the cancer treatment story already told in his First Action.  As a matter of law, he is precluded from arguing that there was an unconstitutional delay in his surgery (whether it was caused by Nurse Smith or the other Defendants) and from arguing that his radiation therapy treatments were unconstitutionally delayed by Nurse Smith.  Accordingly, his Eighth Amendment claims against Nurse Smith based on those allegations will also be dismissed.  *See Randles,* 965 F.2d at 93.

---

[13]This was the specific ground for Simeon seeking injunctive relief in the First Action. [First Action, Declaration (DE 4-1)].  Further, his declaration filed on May 29, 2013, placed the blame for the delay for his radiation treatments on Nurse Smith, not Dr. Kemen.

**E**

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985). Thus, in Kentucky, § 1983 actions are limited by the one (1) year statute of limitations found in Kentucky Revised Statutes ("KRS") § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). A claim begins to accrue when the plaintiff knows or should know that he has suffered an injury and has a "complete and present cause of action." *Cooey v. Strickland*, 479 F.3d 412, 415 (6th Cir. 2007) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Simeon was aware that he had a "complete and present cause of action" against Dr. Kemen, Nurse Cornett, Nurse Black, and Nurse Conyers-Votaw on May 29, 2013, the date that he filed his First Action against them claiming a violation of his Eighth Amendment rights in connection with the treatment they provided for his prostate cancer.[14] Simeon's claims against these same Defendants in this action were filed on June 9, 2014, more than one year after May 29, 2013. Accordingly, his claims against Dr. Kemen, Nurse Cornett, Nurse Black, and Nurse Conyers-Votaw are time-barred.[15]

Simeon also criticizes Nurse Smith for delays in the treatment he received for his prostate

---

[14] Technically, Simeon was already out of time when he filed his First Action with respect to his allegations against Nurses Cornett, Black and Conyers-Votaw, who are alleged to have provided him medical care from March of 2009 to January of 2012 while he was at LSCC and NTC. Those matters, of course, were never reached by the court in the First Action.

[15] The claims against these defendants are the same as those asserted in Simeon's First Action. He attempts to implicate Dr. Kemen by additional general allegations here, but admits that Dr. Kemen no longer looked after his medical needs after November of 2012, when Nurse Smith became his primary medical provider. [Compl., R. 1-3 at 14, 15.]

cancer.  His criticisms relating to events occurring before the filing of his First Action are as follows: (1) Nurse Smith somehow played a role in the alleged delay of his surgery; (2) she provided inadequate care when he saw her in December 2012 and February 2013; and (3) she made an inappropriate comment to him and lied to him about making a follow up appointment for his post-surgical care on April 30, 2013.  Simeon's claims arising from these discrete acts are also time-barred, having occurred prior to the one-year look back period for the statute of limitations.  *Bruce v. Correctional Med. Servs., Inc.*, 389 F. App'x 462 (6th Cir. July 21, 2010).[16]

**F**

Finally, Simeon fails to state additional deliberate indifference claims against Nurse Smith that are not otherwise barred by the statute of limitations or the doctrines of issue and claim preclusion.  Since the filing of his Complaint in the First Action, Simeon has been at KSR where Nurse Smith has been assigned as his primary care provider. [Compl., R. 1-3 at 14, 15].[17] The  only allegations against her, not otherwise disposed of by the statute of limitations or issue preclusion, are that (1) she instructed him to give himself two enemas instead of one before each of his radiation treatments; and (2) that she refused to overturn Dr. Kemen's decision to cancel

---

[16]In *Bruce*, the plaintiff claimed that the defendants failed to provide medical treatment for his knee and hip pain over a course of several years.  The Court held that "[a]ctual acts by a [defendant] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations."  389 F. App'x at 467.  Courts within the Sixth Circuit have adopted *Bruce's* reasoning with respect to denial of medical treatment cases.  *See, e.g.*, *Bell v. Zeurcher*, 2011 WL 5191800, at *3 (E.D. Ky. Oct. 31, 2011) (statute of limitations began to run once inmate was aware of denial of his request for medical treatment); *Dearing v. Mahalma*, 2011 WL 3739029 (S.D. Ohio Aug. 24, 2011) (holding that continuing violation doctrine did not apply to deliberate indifference claim); *Buchanan v. Hamilton Cnty. Sheriff's Dept.*, 2012 WL 6761507 (S.D. Ohio Nov. 26, 2012) (health provider's act of refusing medical care is discrete unlawful act).

[17]Again, Simeon alleges that Dr. Kemen did not see him as a patient after November of 2012. [Compl., R. 1-3 at 14.] He further alleges that Dr. Kemen assigned him to Nurse Smith. [*Id*. at 15.]

his B-12 injections.[18]   Simeon also claims that Nurse Smith, Dr. Kemen and CorrectCare delayed his follow up treatments by not "keeping on top of things" in order to keep "things moving." *Id.* at 17.   Although some of these allegations may have occurred within the statute of limitations period, these general allegations about the delay of his follow up treatments were adjudicated in the First Action in which Simeon sought injunctive relief related to his postoperative care. Regardless of whether he is estopped from asserting all or some of these allegations against Nurse Smith, however, he simply does not otherwise state a plausible claim for deliberate indifference to a serious medical need.

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).   "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1 (1992); *Flanory*, 604 F.3d at 253; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).   The objective component requires that the medical need be sufficiently serious. *Flanory*, 604 F.3d at 253 (citations omitted) ("To satisfy the objective component, the injury must be sufficiently serious."). This component is contextually driven and is responsive to "contemporary standards

---

[18]This decision was actually made before the filing of the First Action on May 27, 2013. Nurse Smith decided not to reinstate Simeon's B-12 injections after blood testing performed in January of 2013 showed that he had normal levels of B-12.  Nurse Smith communicated her decision to Simeon in February of 2013.

of decency." *Hudson*, 503 U.S. at 8 (citation omitted).  The subjective component requires that the official's conduct be deliberately indifferent to plaintiff's needs.  *Farmer*, 511 U.S. at 838-47; *Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). Deliberate indifference is a "state of mind more blameworthy than negligence."  *Farmer*, 511 U.S. 835.  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the [doctor or] official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837).  "The requirement that the [doctor or] official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  *Id.* (citing *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle*, 429 U.S. at 105.  Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm.  *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citations omitted) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner.  Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm."); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("Succinctly stated, negligent medical care does not constitute a valid section 1983 claim.  Further, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.").  Furthermore, a difference

of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle*, 429 U.S. at 107; *Sanchez v.Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to . . . medical needs."); *Shorner v. Comacho*, No 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) ("A difference of opinion regarding medical treatment . . . is insufficient to state a claim under the Eighth Amendment.").

Weighing Simeon's claims against Nurse Smith against the foregoing applicable law, his allegations concerning Nurse Smith and the medical decisions she made with respect to the prescription of enemas and B-12 shots fail to meet the objective test for a deliberate indifference claim. Understandably, Nurse Smith declined to overturn the decision of Dr. Kemen, a medical doctor with more advanced medical training than she had received, after he had evaluated Simeon's medical history and determined that a B-12 supplement was not clinically indicated. Simeon would have this Court second-guess both Dr. Kemen and Nurse Smith and conclude that the failure to prescribe him B-12 is a constitutional issue. He would further have this Court delve into the medical decision to prescribe more than the over-the-counter dose recommended on the package for a Fleet enema. This is exactly the type of judicial second-guessing the Eighth Amendment does not intend to foster. *See Westlake v. Lucas*, 537 F.2d 857, n.5 (6th Cir. 1976).

Simeon also fails to allege facts that the medical treatment provided by Nurse Smith was objectively harmful enough to be of constitutional concern. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). He attached numerous exhibits to his Complaint stating what medical issues could arise because of a vitamin deficiency, but he does not allege that he has developed any of those medical problems. He also provides his lay opinion that discontinuing the B-12 shots somehow made a difference with respect to his prostate cancer, an opinion that is

unsupported by any medical evidence of record in this case.  In fact, Dr. Kemen's medical note explaining the medical reason why Simeon does not need B-12 is included among the exhibits attached to Simeon's Complaint. [*See* "Exhibit A, pg. 8," R. 1-3 at 76.]  Lastly, Simeon does not allege any facts to support his contention that the use of two enemas instead of one put him at a serious health risk, much less what adverse effects he suffered as a result thereof.

Simeon also fails the subjective test for his allegations concerning Nurse Smith's medical decisions related to the use of enemas and his alleged B-12 deficiency.  At most, he disagrees with her medical judgment and her reliance upon her superior.  Such disagreement, however, does not state a claim for deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). He fails to allege any facts to support an inference that she acted with a sufficiently culpable state of mind and with the intent to punish him.

Simeon's allegations against Nurse Smith related to the alleged delay in his radiation treatment also fail to state a claim of deliberate indifference.  Most importantly, he fails to allege any facts suggesting that she acted with the subjective intent to punish him.  To the contrary, also attached to his Complaint are exhibits showing that he received post-surgical care at JGBCC and that Nurse Smith was involved in coordinating those efforts. [*See, e.g.*, Exh. 18, R. 1-3 at. 94; Exh. 571, R. 1-3 at 25.]  Also attached to the complaint is a medical record from his oncologist stating that his allegedly delayed cancer treatments were a success and that the cancer had not spread to his bones. [*See* Exh. 560, R. 1-3 at 109 (no evidence of disease progression); Compl., R. 1-3 at 21.]  Thus, Simeon, himself provides medical evidence showing that any such delay never subjected him to substantial risk of serious harm.  *See Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir. 2001).

Simeon also failed to provide any factual allegations that would connect Nurse Smith to the alleged constitutional deprivation (*i.e.*, the delay in his post-surgical care), which is also fatal to his claims against her. *King v. Massarweh*, 782 F.2d at 825-29. "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d at 889. There must be "an affirmative line, [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.* Instead, he only makes a conclusory statement that Nurse Smith, Dr. Kemen and CorrectCare simply did not "keep on top of things." *Id.* at 17.

Failing to "keep on top of things" may be Simeon's way of articulating that Nurse Smith, Dr. Kemen and CorrectCare could have more closely supervised the coordination of his postsurgical care. Supervisory liability, however, cannot "be based solely on the right to control employees, or simple awareness of employees' misconduct." *McQueen v. Beecher Cnty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006); *Hayes v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982); *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003) ("A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability."). In order for such liability to attach, a plaintiff must prove that the official "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). In other words, liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)).

In a nutshell, as to his claims against Nurse Smith, Simeon is precluded by the statute of limitations and issue and claim preclusion from pursuing practically all of his claims in this

action against Nurse Smith.  As noted above, any remaining claims fail to state a plausible claim of deliberate indifference against Nurse Smith.

**III**

Accordingly, **IT IS ORDERED** as follows:

1.      The motion of defendants Frederick Kemen, M.D.; Elaine Smith, A.P.R.N.; Shelli Conyers-Votaw, A.P.R.N.; Carol Cornett, A.P.R.N.; Denise Black, R.N.;  ("Nurse Black"), and CorrectCare-Integrated Health, Inc., to dismiss Plaintiff's complaint against them, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted [R. 3] is **GRANTED**.

2.      The motion of defendant Kentucky Department of Corrections to dismiss Plaintiff's complaint against it, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted [R. 4] is **GRANTED**.

3.      Plaintiff's motion for the appointment of counsel filed prior to removal [R. 1, attachment 5] is **DENIED AS MOOT**.

4.      All claims having been resolved, plaintiff's complaint is **DISMISSED**.

5.      The Court will enter a judgment contemporaneously with this order.

6.      This matter is **STRICKEN** from the docket.

This the 21st day of January, 2015.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

22
